UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHAREEF ABDOU,

                                 Plaintiff,

                       -v-

LORI ANN WALKER, *Independent Executrix of the Estate of Brian Howard Mahany*,
JOSEPH BIRD,
MAHANY LAW
MAHANY & ERTL, LLC, and
ANTHONY DIETZ,

                                 Defendants.

19 Civ. 1824 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

      Shareef Abdou ("Abdou"), a relator in a successful *qui tam* action against Bank of America (the "Bank"), has sued his former attorneys Brian Mahany, Joseph Bird, Anthony Dietz, Mahany Law, and Mahany & Ertl, LLC (the last two, the "firm"). His suit challenges the allocation—as between Abdou and his attorneys—of Abdou's relator award of $48 million out of a $300 million settlement in the *qui tam* action. Following the Court's June 28, 2021 ruling on defendants' motions to dismiss Abdou's Second Amended Complaint ("SAC"), Dkt. 115, four claims remain, each of which challenges the reasonableness of the firm's $15.625 million share (32.55%) of Abdou's relator award. These are for breach of contract, professional negligence, unjust enrichment, and for relief under the Court's inherent power. Discovery, delayed by the death of defendant Mahany, has recently concluded.

      This decision resolves Abdou's motion to strike the affirmative defenses and certain redundant, immaterial, impertinent, or scandalous matter from the Answer filed by Bird, Dkt. 119, and the Answer jointly filed by Mahany and the firm (together, the "Mahany Defendants"),

Dkt. 120, under Federal Rule of Civil Procedure 12(f).  For the reasons that follow, the Court denies Abdou's motion as to Bird—save as to a single statement—and denies the motion as to the Mahany Defendants in its entirety as moot.

I.      **Relevant Background**

   A.      **Relevant Allegations in Abdou's SAC**

Abdou's SAC alleges the following.  In 2013, Abdou worked as a mid-level executive in the Bank's operations group, where he observed improper practices involving the issuance of "toxic mortgages."  SAC ¶¶ 2, 27–28, 30–31.  Abdou contacted the firm[1] and, in July 2013, discussed with the individual defendants the prospects of, *inter alia*, an action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, and the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1831j.  *See* SAC ¶¶ 32–33.  In fall 2013, the Department of Justice ("DOJ") informed Abdou that the Government planned to file a lawsuit against the Bank and that, to recover as a relator under the FCA, Abdou needed to file an FCA action immediately.  *Id.* ¶ 46.  On January 14, 2014, Abdou filed his *qui tam* action in this District, bringing claims under the FCA but not the FIRREA.  *See United States ex rel. Abdou v. Countrywide Fin. Corp.*, No. 14 Civ. 268 (AKH) (S.D.N.Y. filed Jan. 14, 2014).  In August 2014, DOJ, after an investigation, reached a tentative global settlement with the Bank for $16.65 billion, $300 million of which would be allocated to settle Abdou's *qui tam* action.  SAC ¶ 52.  Of those $300 million, DOJ eventually offered, and Abdou accepted, a relator share of 16%—or $48 million.  *Id.* ¶¶ 56–59.  Abdou alleges that defendants pressured him into accepting this award in lieu of pursuing a higher one.  *Id.* ¶¶ 59–63.  Relations between Abdou and defendants

---

[1] At the time Abdou hired the firm, it operated under the name Mahany & Ertl, LLC.  SAC ¶ 75.  On August 25, 2015, Mahany & Ertl, LLC was dissolved, and Mahany began operating his firm under the name Mahany Law.  *Id.*

soured and, at times, devolved into insults. *Id.* ¶¶ 68–69. On December 15, 2014, the firm received $15.625 million of the relator shares in attorneys' fees. *Id.* ¶¶ 64–65. Abdou received the remainder (more than $32 million).

### B. Relevant Procedural History

On July 12, 2019, Abdou filed the SAC and supporting exhibits. Dkts. 68, 69 (corrected filing July 15, 2019). On July 23, 2019, Bird filed a motion to dismiss the SAC. Dkt. 75 (amending motion to dismiss prior complaint). On August 5, 2019, Dietz and the Mahany Defendants filed motions to dismiss the SAC and memoranda of law in support. Dkts. 81–84. On August 12, 2019 and September 12, 2019, Bird's motion, and the remaining two motions, respectively, became fully briefed. Dkts. 87, 94–95.

On June 28, 2021, the Court resolved the motions to dismiss, granting each in part and denying each in part. The decision left in place four claims challenging the reasonableness of defendant's share of Abdou's relator's award. Dkt. 115.[2]

On July 30, 2021, Dietz answered the SAC. Dkt. 118. On August 20, 2021, Bird, Dkt. 119 ("Bird Answer"), and the Mahany Defendants, Dkt. 120 ("Mahany Answer"), filed answers (together, the "Late Answers"). On September 10, 2021, Abdou filed a motion to strike the Late Answers. Dkt. 121 ("Mot."). On September 15, 2021, Bird filed an amended answer purporting to cure the deficiencies in his answer. Dkt. 123 ("Amended Bird Answer"). On September 17, 2021, Bird opposed the motion to strike, mainly on the ground that the Amended Bird Answer had cured the alleged objectionable aspects of his original answer. Dkt. 124. On September 22, 2021, Abdou and the Mahany Defendants filed a letter stating that the motion to strike as it

---

[2] The Court granted Abdou leave to replead a component of his breach-of-contract claim within 14 days of that decision. *See* Dkt. 115 at 31. Abdou did not file an amended complaint so repleading.

3

pertained to the Mahany Defendants had been resolved, with Abdou consenting to the Mahany Defendants' filing an amended answer. Dkt. 125. On September 24, 2021, the Mahany Defendants filed a cured answer. Dkt. 127. This left pending only Abdou's motion to strike Bird's answer.

On January 13, 2022, the Court granted a joint request to stay this action in light of Mahany's passing. Dkt. 139. On May 6, 2022, the Court granted Abdou's motion to substitute, for Mahany, Lori Ann Walker, the executrix of Mahany's estate. Dkt. 152. That day, the stay expired. *See* Dkt. 139.

## II.     Discussion

### A.     Legal Standards for Motion to Strike

Under Rule 12(f), on a motion or *sua sponte*, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Federal Courts have discretion in deciding whether to grant motions to strike." *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. 2019) (citation omitted). However, motions to strike under Rule 12(f) are generally "disfavored and granted only if there is strong reason to do so." *Anderson News, L.L.C. v. Am. Media, Inc.*, No. 09 Civ. 2227 (PAC), 2013 WL 1746062, at *3 (S.D.N.Y. Apr. 23, 2013); *see also FRA S. p. A. v. Surg-O-Flex of Am., Inc.*, 415 F. Supp. 421, 427 (S.D.N.Y. 1976) ("Unless it is clear that the portion of the pleading has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant, the [pleading] should remain intact.").

### B.     Application to the Bird Answer and Amended Bird Answer

#### 1.     Abdou's Claim of Untimeliness

The Court must first determine whether to strike, as untimely, the Bird Answer—and thus the Amended Bird Answer purporting to cure the Bird Answer. In his opening brief, Abdou does

4

not develop this argument.[3]  In his Reply, however, he argues that the Bird Answer and Amended Bird Answer were filed late under Federal Rule of Civil Procedure 6(b).  *See* Reply at 5–8.

The Court denies Abdou's motion to strike on this ground, for two independent reasons.

First, Abdou has waived the argument that Bird's answers were untimely.  The Second Circuit has held that arguments raised in "a single conclusory sentence" are waived.  *Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005); *see also Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (finding argument waived where party devoted to it "a single sentence in its opening brief"); *Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 34 n.4 (D.D.C. 2017) ("Undeveloped arguments are waived because 'it is not the obligation of this court to research and construct legal arguments open to parties . . . .'" (quoting *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986))).  Such is the case here, in that Abdou's opening brief barely feinted at this argument.

Second, striking Bird's answer would have the drastic consequence of eliminating his nine affirmative defenses.  These were for: accord and satisfaction; release; settlement; failure to state a claim upon which relief can be granted; statute of limitations; unclean hands; estoppel; laches; and any affirmative defense pled by any other defendant.  Bird Answer at 12.[4]  Striking all of these defenses—some of which, upon an initial review, appear to have potential promise—

---

[3] *See* Mot. at 2 (stating only that because Bird "has not requested Plaintiff's agreement or leave from the Court to permit his late filing[, he] has waived his right to assert numerous affirmative defenses" under Rule 12(h)), 6 (stating in passing that the Court should strike Bird's affirmative defenses because they are "untimely").

[4] Although Bird's initial answer merely identified these defenses without pleading supporting facts, his amended answer does so.

would disarm Bird and put him, potentially, perilously close to a default in a case in which Abdou seeks to wrest millions of dollars from him.

"[W]here a motion to strike an answer is based on untimeliness . . . such a motion properly arises under the Court's authority to enforce the deadline for filing an answer established by the Fed. R. Civ. P. 12(a) . . . (and any relevant Local Rules of Practice)." *Skyline Steel, LLC v. Pilepro, LLC*, No. 13 Civ. 8171 (JMF), 2015 WL 999981, at *2 (S.D.N.Y. Mar. 5, 2015) (citation omitted) (second ellipses added). "Generally, such a motion is governed by the same standard that governs a motion to set aside an entry of default," meaning that the Court must consider "(1) whether the default was willful; (2) whether the delay in filing would prejudice the adversary; and (3) whether a meritorious defense is presented, along with other relevant equitable factors, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would produce a harsh or unfair result." *Id.* (cleaned up) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)) (other citations omitted). "In weighing those factors, the Court must be mindful that 'strong public policy favors resolving disputes on the merits,' and that, accordingly, judgment by default is a drastic remedy to be applied only in extreme circumstances.'" *Id.* (quoting *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001); *Alli v. Steward-Bowden,* No. 11 Civ. 4952 (PKC) (KNF), 2012 WL 3711581, at *3 (S.D.N.Y. Aug. 24, 2012), *report and recommendation adopted*, No. 11 Civ. 4952 (PKC) (KNF), 2012 WL 4450987 (S.D.N.Y. Sept. 25, 2012)).

Here, the Court finds, Bird's lapse in filing a late Answer does not warrant the outsized consequence of badly hobbling his defense. There is no basis to claim that Bird's late filing was willful. Abdou's sparse briefs do not address this factor. Bird, in contrast, plausibly explains

why his late filing was not willful—he was awaiting Abdou's filing of an amended complaint repleading Count V, as the Court had authorized, Dkt. 115, but Abdou never did so. Bird Opp. at 1. When a defendant has a good-faith basis to believe that it is upon plaintiff to file an amended complaint, a failure to answer before such is filed is not, without more, willful. *See Alli*, 2012 WL 3711581, at *3 (recommending denial of motion to strike untimely answer where, without more, failure to file answer late, court had no basis for concluding that conduct was willful). Nor can Abdou credibly claim prejudice from Bird's 49-day delay in filing his answer. Abdou states only that Bird's affirmative defenses were "months overdue." Reply at 8. That of course is an overstatement, as Bird filed his answer 63 days after the Court's ruling on the motion to dismiss, *i.e.*, 49 days after the 14 days in which Bird had to file an answer had passed. *See* Fed. R. Civ. P. 12(a)(4)(A).[5] In all events, Abdou fails to explain why the passage of this time worked any harm on him so as to overcome the strong public policy of resolving cases on the merits. *See Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 7–8 (D.D.C. 2004) (denying motion to strike answer filed six months late as untimely, where granting motion would "contravene the established policies disfavoring motions to strike . . . and favoring resolution of cases on their merits"); *Llewellyn v. N. Am. Trading*, No. 93 Civ. 8894 (KMW) (HBP), 1996 WL 715532 at *2 (S.D.N.Y. Dec. 11, 1996) (denying motion to strike untimely answer because doing so "would violate the policy of resolving cases on the merits"); *Alli*, 2012 WL 3711581, at *3 (denying motion to strike where answer was filed 27 days late).

---

[5] Abdou knows this. *See* Reply at 4 ("On June 28, 2021, this Court entered an Order granting in part and denying in part Defendants' motions to dismiss Plaintiff's SAC. Thereafter, Defendant Bird did not file an Answer within the 14-day time period prescribed by [Rule] 12(a)(4)(A)." (citation omitted)).

Equitable factors favor the same result. The Amended Bird Answer contains sufficient factual support, *see discussion infra*, and striking these defenses would potentially be outcome-determinative, a harsh result disfavored by the case law.

The Court therefore declines to strike Bird's affirmative defenses as untimely.[6]

Having declined to strike the Bird Answer's affirmative defenses, the Court also accepts the Amended Bird Answer, which was timely filed 14 days after Abdou's brief in support of the motion to strike. *See Silk v. HCMC Legal, Inc.*, No. 20 Civ. 10389 (KPF), 2021 WL 735348, at *1 (S.D.N.Y. Feb. 24, 2021) (accepting defendants' answers filed after plaintiff's motion to strike superseded original answers, mooting motion to strike; original and amended answers filed 16 days apart, *see id.* Dkts. 17–18, 29, 31); *Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 129 (E.D.N.Y. 2015) (denying as moot plaintiff's motion to strike original answer where defendant had filed an amended answer; original and amended answer filed 12 days apart, *see id.* Dkts. 4, 15). Accordingly, the Court treats the Amended Bird Answer as superseding the Bird

---

[6] Abdou's case authority is inapposite. *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*'s cursory discussion of when a court *may* extend the deadline for filing an answer under Rule 6(b) is irrelevant here. 109 F.R.D. 692, 695 (S.D.N.Y. 1986). *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, an 80-year-old case, similarly does not apply. There, a different circuit court found that the parties' stipulations for extensions to answer or otherwise respond to the complaint were ineffective, defendants were thus in default, and plaintiffs were permitted to move for a default judgment. 130 F.2d 185, 185–87 (3d Cir. 1942). *Mouloki v. Epee* involved a motion to file an amended answer 17 months after the operative complaint had been filed, no motion to dismiss had been decided, and fact discovery had closed. 262 F. Supp. 3d 684, 693–94 (N.D. Ill. 2017). *Grover v. Commercial Insurance Co.* did not deny a request to file a late answer. Rather, it vacated a magistrate judge's decision to grant such an extension and remanded for reconsideration under a clarified standard. *See* 104 F.R.D. 136, 138–39 (D. Me. 1985). And *Acosta-Mestre v. Hilton International of Puerto Rico* concerned a motion to amend the complaint under Rule 15(a), not one for leave to file a late answer or a motion to strike. *See* 156 F.3d 49, 51–53 (1st Cir. 1998).

Answer. In the balance of this decision, the Court therefore treats the arguments Abdou has raised in his Reply as addressed to the Amended Bird Answer.[7]

### 2. Abdou's Claim of Insufficiently Pled Affirmative Defenses

To successfully strike an affirmative defense, a plaintiff must show that "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019). "The Second Circuit has found that the 'plausibility standard of [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)] applies to determining the sufficiency of . . . the pleading of an affirmative defense." *Lee v. Can. Goose US, Inc.*, No. 20 Civ. 9809 (VM), 2021 WL 6881256, at *2 (S.D.N.Y. Oct. 19, 2021) (alterations and ellipsis in original) (quoting *GEOMC Co.*, 918 F.3d at 98). But "applying the plausibility standard to any pleading is a 'context-specific' task." *GEOMC Co.*, 918 F.3d at 98 (internal quotation marks and citation omitted). As such, courts may apply a "relaxed version" of the plausibility standard where it is warranted by "(1) the limited period of time a pleader of an affirmative defense has relevant to the pleader of the complaint; and (2) the 'nature of the affirmative defense,' *i.e.*, whether factual support is readily available." *Jablonski v. Special Couns., Inc.*, No. 16 Civ. 5243 (ALC), 2020 WL 1444933, at *2 (S.D.N.Y. Mar. 25, 2020) (quoting *GEOMC Co.* 918 F.3d at 98). But a party pleading an affirmative defense must "support [its] defenses with some factual allegations to make them plausible." *Lee*, 2021 WL 6881256, at *2.

---

[7] Abdou erred after Bird submitted an Amended Answer, by addressing that new pleading in a reply brief rather than in a renewed motion to strike, which would have given Bird a proper opportunity to oppose it. *See Silk*, 2021 WL 735348, at *1. In the interest of economy and avoiding wasteful litigation, the Court addresses herein the arguments in Abdou's Reply as applied to the Amended Bird Answer. Because the Court finds these arguments meritless with one minor exception, this approach works no harm to Bird.

In his Reply, Abdou appears to have abandoned the argument that Bird's affirmative defenses fail *GEOMC Co.*'s plausibility standard. And with good reason. The Amended Bird Answer supplies ample factual detail for its nine affirmative defenses. *See* Amended Bird Answer at 11–14. No doubt because Abdou's opening brief identified the pleading defects in the affirmative defenses as articulated in the Bird Answer, the Amended Bird Answer shored up its pleading of these defenses, such that Abdou's Reply does not attack their sufficiency at all. Abdou, the Court finds, has abandoned his argument that Bird's affirmative defenses, as amended, are deficiently pled.

The Court accordingly denies Abdou's motion to strike Bird's affirmative defenses.

### 3. Abdou's Claim as to Redundant, Immaterial, Impertinent, or Scandalous Matter

In Abdou's opening brief, he argued that certain statements in Bird's answer were objectionable, impertinent, or scandalous. Bird responded by revising some statements. Abdou, in his reply, took issue with a narrowed set of statements. Reply at 9. The remaining challenged statements are.

> ¶ 1. No answer is required to a "preliminary statement[.]" To the extent it is, the claims are denied as false. The complaint is actually a product of Abdou's greed and hurt feelings.
>
> ¶ 2. Denied for the reason the allegations are untrue. Mr. Abdou wanted to profit on his knowledge of wrongdoing by Bank of America, his employer.
>
> ¶ 3. Denied. Mr. Abdou wanted to profit on his knowledge without incurring the associated risk of filing an FCA action.
>
> ¶ 30. Denied for the reason the allegations are untrue. Abdou announced he was familiar with many large law firms and their practices as a result of his position with the bank. He had also retained counsel for his divorce action, his then girlfriend, "Jen" was an attorney and his partner inside of BoA. Laurence Howard, was also an attorney.
>
> ¶ 70. Mr. Abdou has an admitted cognitive and emotional injury stemming f[ro]m his use of Propecia. He was a plaintiff in a class action involving that drug and

  received compensation for his significant cognitive and emotional injuries. Some of the allegations, such as the FCA claim belonging to the government and not Abdou are admitted. The other allegations are denied.

Amended Bird Answer. *Cf.* Reply at 9–10 (quoting uncured paragraphs from Bird Answer).[8]

  The standards governing challenges under Rule 12(f) are familiar. "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005). "'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012). "The touchstone remains whether no evidence in support of an allegation would be admissible." *Id.* at 417.

  Putting aside ¶ 70, the above statements responding to like-numbered paragraphs in the SAC are not so immaterial as to have "no essential or important relationship to" Abdou's claims, so impertinent as to being "not necessary to resolve[] the disputed issues," or so scandalous as to "unnecessarily reflect[] on [Abdou's] moral character . . . or . . . detract[] from the dignity of the [C]ourt." *In re MTBE Prods.*, 402 F. Supp. 2d at 437. Paragraphs 1–3 of the SAC, a preliminary statement which broadly frames Abdou's view of the case, describes Abdou as a whistleblower on his bank's illegal practices, concerned about the possibility of losing his job, and seeking to recoup ill-gotten fees from his former lawyers. *See* SAC ¶¶ 1–3. Unsurprisingly, ¶¶ 1–3 of the Amended Bird Answer respond and defend with a symmetrical countertheory: that Abdou had

---

[8] Abdou errantly quotes certain of Bird's allegations from his initial Answer, Reply at 9–10, that have been removed. He concedes that Bird's statements in ¶ 29 are no longer objectionable. Reply at 10 n.4.

impure motives when he approached the firm and again when he filed this lawsuit against them. There is no impropriety in these counters. Likewise, ¶ 30 of the SAC alleges that Abdou "was unsure where to begin searching for [an attorney]." SAC ¶ 30. Paragraph 30 of Bird's Amended Answer is a fair counter. It alleges relevant facts that, if true, would tend to rebut Abdou's allegations.

However, as to ¶ 70 in the Amended Bird Answer, the Court strikes all statements relating to Abdou's cognitive or emotional impairment. Two years ago, on August 13, 2020, this Court issued an order denying a discovery request by defendant Dietz as to Abdou's cognitive impairment on the ground that "[a]ny cognitive impairment Abdou may or may not have suffered at the time [at issue] . . . is not relevant to the claims in this matter." Dkt. 114 at 1. That ruling is pertinent here. Bird was on notice that such facts, whether true or not, had no bearing on this case. The Court strikes ¶ 70 of the Amended Bird Answer.

### C. Application to the Mahany Answer

In his opening brief, Abdou moved to strike the affirmative defenses in the Mahany Answer. That motion is moot in light of Abdou and the Mahany Defendants' agreement, on September 23, 2021, to cure the Mahany Answer without Court intervention. *See* Dkt. 126 (Court, acknowledging such agreement). The Court accordingly denies as moot Abdou's motion to strike the affirmative defenses in the Mahany Answer.

## CONCLUSION

For the foregoing reasons, the Court denies Abdou's motion to strike the Amended Bird Answer, save as to the statements in ¶ 70 of the Amended Bird Answer relating to Abdou's cognitive or emotional impairment.

The Court further notes that Abdou's instant motion, save as to ¶ 70, was baseless and unproductive. It needlessly wasted the Court's time and that of opposing counsel. Abdou is

"admonished to review the record" and his strategic choices "carefully before engaging in any further, potentially wasteful motion practice." *Doe 1 v. E. Side Club, LLC*, No. 18 Civ. 11324 (KPF), 2021 WL 2322941, at *1 (S.D.N.Y. May 11, 2021).

The Court respectfully directs the Clerk of Court to terminate the motion pending at Dkt. 121.

SO ORDERED.

                                                                          *Paul A. Engelmayer*
                                                                          PAUL A. ENGELMAYER
                                                                          United States District Judge

Dated: August 12, 2022
          New York, New York